**819-15**

NO. 05-14-00724-CR

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 18 2015

Abel Acosta, Clerk

ROBERT JOE KIMBLE

Vs.

THE STATE OF TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

AUG 18 2015

Abel Acosta, Clerk

From Appeal No. 05-14-00724-CR

Trial Cause No. F13-55104-T

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS: Comes now, Robert Joe Kimble, Petitioner, and submits this "Petition For Discretionary Review" on appeal from a conviction for aggrvated assault in the 283rd Judicial District Court of Dallas County, Texas, Honorable Rick Magnis, judge presiding. The Petitioner appealed to the court of Appeals, Fifth supreme Judical District. The case was affirmed on 5-28-2015.

# · TABLE OF CONTENTS ·

INDEX OF AUTHORITES _____ 1.

STATEMENT OF THE CASE _____ 2.

MEMORANDUM OPINION _____ 3.

REASON FOR GRANTING REVIEW _____ 4.

GROUND FOR REVIEW _____ 5,6,7.

ARGUMENT _____ 5,6,7,8,9,10.

PRAYER _____ 11.

SERTIFICATE OF SERVICE _____ 12.

Petitioner,

waive any statement regarding oral aqument, and there was no motion's filed for rehearing on appeal.

II.

# INDEX OF AUTHORITIES

Cases:

Danzig v. State, 546 S.W.2d 300, 301. (Tex.Crim.App.1977)___9.

Johnston v. State, 115 S.W.3d 761, 763, at 764. (Tex.App.2003)___7.

Lane v. State, 151 S.W.3d at 189. (Tex.Crim.App.2004)_____8.

Rivera v. State, 271 S.W.3d 301, 306, at 307. (Tex.App.2008)____7.

Turner v. State, 664 S.W.2d at 90. (Tex.Crim.App.1983)_____9.

Statutes:

Tex. Penal Code Ann. 1.07(a)(46)_____6.
Tex. Penal Code Ann. 1.07(a)(17)_____6.
V.T.C.A. Penal Code. 1.07(a)(17)(46)_____6.
Tex. Penal Code Ann. 1.07(a)(17)(34)._____9.

# STATEMENT OF THE CASE

A grand jury indicted Appellant for aggravated assault with a deadly weapon. (CR:8). The indictment alleged that Appellant and the complaining witness had a dating relationship. (CR:8). The indictment alleged one prior felony conviction as an enhancement. (CR:9). Appelant pleaded not guilty to the charge. (CR:51:RR2: 10; RR3:6). A jury found Appellant guilty of the offense. (CR:50; RR3:167).

Appellant elected for the court to assess his punishment. (CR:38; RR2:6). The court found the enhancement pargaraph true and assessed punishment at 25 year's imprisonment. (CR:51-53;RR4;42-43). The court made an affirmative finding that Appellant used or exhibited a deadly weapon, to wit: a pipe, during the commission of the offense. (CR;51-53;RR4;42). The court also made an affirmative finding that this in case involved family violence. (CR;51-53;RR4;42). Appellant timely filed his notice of appeal. (CR;40;RR4; 43).

# MEMORANDUM OPINION

Before Chief Justice Wright Justices Myers and Evans
Opionion by Chief Justice Wright

A jury found appellant, Robert Joe Kimble, guilty of aggravated assault. The trial court found the indictment's enhancement paragraph true and assessed appellant punishment at twenty-five year's imprisonment. The court also mad affirmative finding that (a) appellant used or exhibited a deadly weapon and (b) the case involved family violence. In a single issue, appellant challenges the sufficiency of the evidence to support his conviction. We affirm the trial court's judgment.

---

Petitioner, was charged with aggravated assault. The indictment states in relevant part that he did: Unlawfully then and there intentionally, knowingly and recklessly cause bodily injury to DAVIDA WESLEY, hereinafter called complainat, by STRIKING COMPLAINAT WITH A HAND A TREE BRANCH AND A PIPE, and said defendant did use and exhibit a deadly weapon, to-wit: a hand, a tree branch, and pipe, during the commission of the assault.

# Reason for Granting Review

Petitioner, request for review under Tex.R.App.P. Rulle 66.3; in reference to:

(A). Whether a court of appeal's decision conflicts with another court of appeal's decision on the same issue;

(C). Whether a court of appeal's has decided an important question of State or federal law in a way that conflicts with the applicable decisions of the court of Criminal Appeal's or the Supreme Court of the United States;

(F). Whether a court of appeal's has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of the court of Criminal Appeal's power of supervision.

# GROUND FOR REVIEW NUMBER ONE

The court of Appeals erred in holding that rational jurors could have concluded Petitioner, hand was used as deadly weapon, and the court of Appeals conclude the evidence supports a finding that Petitioner, use of his hand in this case was "capable" of causing serious bodily injury.

## • ARGUMENT •

The Court of Appeals failed to prove beyond a reasonable doubt that Petitioner used or exhibited a deadly weapon during the alleged assault. Althoug the state introduced evidence that a hand, tree branch, or pipe could hypotheticed be a deadly weapon. it did not meet it's burden of proving that Petitioner used any of these objects in a "manner capable" of causeing serious bodily injury or death.

The deadly weapon allegation was an essential element of the aggravated assault charge. Serious bodily injury is defined as bodily injury that creates a substantial risk of death or that causes death, Serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex. Penal

Code Ann. 1.07 (a)(46). The Court of Appeals failure to prove the deadly weapon element beyond a reasonable doubt in this case renders the evidence insufficient to support Petitioner's conviction.

## GROUND FOR REVIEW NUMBER TWO

The Court of Appeals erred in holding that evidence supports a finding that petitioner, use of a branch or pipe in this case could have caused serious bodily injury, and that the evidence was sufficient.

## • ARGUMENT •

Wesley, testified that Petitioner, hit her with his hand and that he "may have used a tree branch or pipe to hit her arm. Neither a hand, nor a tree branch, nor a pipe is a firearm. Therefore, these objects are not deadly weapons per se, Tex. Penal Code 1.07(a)(17), Furthermore, these items are not manifestly designed, made, or adapted for purpose of inflicting death or serious bodily injury. Consequently, the Court of Appeals was obligated to prove that Petitioner, used these object in a "manner" capable of causing serious bodily injury or death according to the fact of this case. The Court of Appeals wholly failed to meet it's burden. V.T.C.A. Penal Code. 1.07 (a.) (17) (46).

# GROUND FOR REVIEW NUMBER THREE

The Court of Appeals erred in reviewing and examining only what was said at trial by the complaining witness.

## • ARGUMENT •

The Court of Appeals knows of no other medical treatment for Wesley, other than the paramedic report completed ninety minutes after the alleged offense. It would be clearly wrong and manifestly unjust to conclude serious bodily injury resulted from this fact alone under a "factual sufficieney review". There is no evidence that Wesley, sought or received any additional medical treatment for her injuries. Therefore, the finding of a deadly weapon cannot rest on proof that Wesley, actually suffered any serious bodily injury from the alleged assault. SEE. Johnston v. STATE, 115 S.W. 3d 761, 763, at 764. (Tex. App. 2003).

The Court of Appeals failed to produce suffic evidence in this case about the inherent nature or deadly capabitity of the weapon used to assault Wesley, SEE, Rivera v. STATE, 271 S.W. 3d 301, 306, at 307. (Tex. App. 2008). The photographs of Wesley, injuries reflect surface skin injuries. The scratch on Wesley's arm and face are not indicative of the type of force necessary to cause death or

7.

serious bodily injury. The record is entirely devoid of any evidence or testimony that Wesley's, documented injuries were consistent with the type of force that would indicate the object or object's used were capable of causing death or serious bodily injury. The nature of Wesley's, injuries does not lead to a reasonable inference that Petitioner, used any of these objects in a manner capable of causing death or serious bodily injury.

Wesley, aslo stated to officer Tovar, that the only weapon used was Petitioner's, "hands". (RR3;121). In officer Tovar, report there was "no" reference to a tree branch nor pipe. (RR3;121). Officer Tovar, testified that when he met with Wesley, that night, she could not tell him how the marks on her arm happend. (RR3;119). Although Wesley, refused transport to the hospital when the paramedic's evaluated her that morning, she testified that she went to the hospital the next day after the incident. (RR3;47) "NO medical records were introduced into evidence." (RR3;84). In Lane v. STATE, 151 s.w.3d at 189, the testimony of a nurse, paramedic, and two police officer's as well as through the victim's hospital records show the facts, and proof that "Ms. Lane," actually went to the hospital, but in "Petitioner's, case", there is no proof or medical records showing that Wesley, ever went, just her testimony that she went. There is "no" medical report showing that Wesley, suffered from her injuries like she testified to in trial. "Ms. Lane,

8.

was examind at the hospital as well by the paramedic's and nurse." Ms, Lane, suffered from nausea, vomiting, dizziness, and a concussion to the brain."

Unlike Wesley, Ms. Lane, actually went to the hospital the day of the assault. The evidence is legal and factualy insufficient to support the conviction, because the Appeal's court failed to prove beyond a reasonable doubt that Petitioner, used or exhibited a deadly weapon.

The State, and the court of Appeal's must prov'id the trier of fact with some evidence, normally through expert testimony, that the weapon was "used" or intended to be used in such a way that it was "capable" of causing death or seriouse bodily injury. Tex. Penal Code Ann. 1.07 (a) (17) (34).

In Danzig, wounds inflicted on the injured party are factor's to be considered in determining whether a weapon is a deadly weapon. "SEE;" Danzig v. State, 546 S.W. 2d 300, 301, (Tex. Crim. App. 1977). Ordinarily use merely of hands, fist or other member's of the body will not constitute an aggravated assault. "SEE;" Turner v. State, 664 S.W. 2d at 90. (Tex. Crim. App 1983).

Petitioner, would like to attempte to explain how Wesley, gotten the marks on her arm:

First Wesley, could not have been beaten with a pipe or tree branch, because if this Court would please examen the photograph's of Wesley's injury on her arm, this court will see that the two marks are scratch's. The ~~marks~~

9.

two marks are also "identical in shape and size;" there is no bruising showing that the marks was caused by being beaten. Wesley, told half of the truth to officer Tovar, about what happend that night. It would be hard to beat somone, and leve identical marks only centimeter's apart from the other one. The two mark's on Wesley,is arm are curved at the end, a tree branch nor a pipe would have left that kind of mark with out "bruising, or swelling." Wesley's arm dose not show bruising or swelling. "SEE," Patient Care Report, that was completed ninety minutes after the alleged offense. (Stat exhibit 2). If there is no bruising or swelling, how is it capable of causing serious bodily injury? The injury on Wesley's arm was caused by a finger-nall not a tree branch or pipe.

Petitioner, would like to show the three different circumstances of his case; First, Wesley, tells officer Tovar, that there was not a weapon used. Second, Wesley, told detective Everett, that a "Unknown Witness" was the one who told her that she was hit with a pipe, but that "Unknown Witness" was her daughter who was at work at that time (RR3;77, 88). Third, Wesley, testified that she saw the pipe being used on her. (RR3;28). These are just three of the different inconsistent circumstanes of Petitioner case.

## · PRAYER ·

WHEREFORE, PREMISES CONSIDERED, Petitioner, pray's that this Court grant his Petition-for Discretionary Review, and reverse this cause and enter an order of acquittal.

Respectfully submitted

Robert Joe Kimble

Robert Joe Kimble
pro se, Petitioner,
T.D.C.J. #1934929
McConnell Unit
3001 S. Emily drive
Beeville, Tx 78102

# SERTIFICATE OF SERVICE

I certify that a true and correct copy of the above foregoing "Petition for Discretionary Review", has been forwarded by U.S. Mail, postage prepaid, first class, to the Attorney for the State, _Craig Watkins_, at Dallas County District Attorney's office, Frank Crowley Court Building, 133 N. Riverfront Blvd, LB-19, Dallas, Tx 75207-4399. and to the state Prosecuting Attorney, P.O. Box 124 05, Austin, Tx 78711 on this the __10__ day of __8__, 20 __15__.

Robert Joe Kimble
Petitioner, Pro se

I, Robert Joe Kimble, T.D.C.J.# 1934929, being presently incarcerated in the McConnell Unit of the Texas Department of Criminal Justice in Beeville, County, Texas, verify and declare under penalty of perjury that the foregoing statements are true and correct. Executed on this the __10__ day of __8__, 20 __15__.

Robert Joe Kimble
T.D.C.J.# 1934929

12.

Affirmed and Opinion Filed May 28, 2015



In The

# Court of Appeals
## Fifth District of Texas at Dallas

---

### No. 05-14-00724-CR

---

**ROBERT JOE KIMBLE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

### On Appeal from the 283rd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-1355104-T

---

## MEMORANDUM OPINION

Before Chief Justice Wright and Justices Myers and Evans
Opinion by Chief Justice Wright

A jury found appellant Robert Joe Kimble guilty of aggravated assault. The trial court found the indictment's enhancement paragraph true and assessed appellant's punishment at twenty-five years' imprisonment. The court also made affirmative findings that (a) appellant used or exhibited a deadly weapon and (b) the case involved family violence. In a single issue, appellant challenges the sufficiency of the evidence to support his conviction. We affirm the trial court's judgment.

Davida Wesley is the complainant in this case. She testified that she and appellant had been dating for three months when the incident occurred that forms the basis of this case. Wesley testified she dropped off her daughter at work on that evening and went to see appellant at about nine o'clock. They went to appellant's brother's apartment for dinner and then spent the

evening together with a group of people at a neighbor's apartment. Wesley testified that as one of the other couples prepared to leave the neighbor's apartment, the man approached her and tried to kiss her on the mouth. She rejected this advance. Not long afterward, Wesley and appellant left the gathering and began to walk toward her nearby condominium. Wesley related that as she reached to hold appellant's hand, he hit her with his fist across her face. Then he grabbed her "and he just started wailing [sic]" on her, repeatedly hitting her on the side of her head and face. Wesley testified she screamed for help, but no one responded. She asked appellant, "How could you do this to me? . . . You're going to take my life?" After some time, she blacked out. When she came to, appellant was using his foot to hold her down, and he was striking her on the arm with a pipe. Wesley stated that at first she thought appellant was striking her with a tree branch, but when she saw pictures of the scene, she saw several rod-like pipes on the ground where she had been beaten. Eventually, appellant ran away.

Wesley and her daughter met with police and paramedics shortly after four o'clock that morning. Photographs taken by the officers show an abrasion beneath Wesley's left eye and a large knot on her forehead above that eye. Her face was very swollen, and she had marked welts on her arm. Wesley denied losing consciousness in her interview with police, but she stated at trial that she did so because she did not want to worry her daughter any further.

Ikkendra Oliobi, Wesley's daughter also testified at trial. She explained that her mother picked her up from work sometime around three or four o'clock that morning. When she saw her mother's injuries, Oliobi insisted that she call the police. After the police interview, at about six o'clock that morning, Oliobi went to the place where her mother said the attack had taken place. Oliobi found a bracelet and earrings belonging to her mother on the ground; she testified her mother had been wearing those earrings the night before when she dropped Oliobi off at work. Oliobi also saw three or four metal pipes on the ground. She took pictures of the area,

including the jewelry, the pipes, and what she believed was blood on the ground. Those photographs were also admitted into evidence.

Appellant was charged with aggravated assault. The indictment states in relevant part that he did:

> unlawfully then and there intentionally, knowingly and recklessly cause bodily injury to DAVIDA WESLEY, hereinafter called complainant, by STRIKING COMPLAINANT WITH A HAND AND A TREE BRANCH AND A PIPE, and said defendant did use and exhibit a deadly weapon, to-wit: a HAND, A TREE BRANCH, AND A PIPE, during the commission of the assault.

Appellant's specific complaint on appeal is that the evidence is insufficient to establish that he used or exhibited a deadly weapon in this case. That use or exhibition was an essential element of the aggravated assault with which appellant was charged. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011) (person commits aggravated assault if he commits assault and uses or exhibits deadly weapon during commission of assault).

We review this challenge by examining the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the deadly weapon element beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury exclusively determines the credibility of the witnesses and the weight to be given their testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Appellant acknowledges that both the police officer who interviewed Wesley and the detective who investigated this case testified that a hand, a tree branch, and a pipe could be deadly weapons, but he argues the State failed to prove how any of the three were used as deadly weapons in this case. We disagree.

The State is not required to show that the use or intended use of the weapon actually causes death or serious bodily injury; instead, it must show that the weapon's "use or intended use *is capable of* causing death or serious bodily injury." TEX. PENAL CODE ANN.

–3–

§ 1.07(a)(17)(B) (West 2011) (emphasis added). To determine whether something is a deadly weapon, the jury may consider all the surrounding facts. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). The record indicates Wesley believed appellant was trying to kill her by repeatedly punching her in the head and face. The police photographs establish that she suffered from visible facial and head injuries as a result of those blows to the head. Wesley also testified that more than a year after the assault, she still felt its effects in her jaw. The injuries inflicted on the victim are factors to be considered in determining whether a hand was used as a deadly weapon. *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004). We conclude the evidence supports a finding that appellant's use of his hand in this case was capable of causing serious bodily injury. Therefore, rational jurors could have concluded appellant's hand was used as a deadly weapon.

And as to whether appellant used a tree branch or a pipe as a deadly weapon, Wesley's testimony and the police photographs of the injury to her arm support a similar finding. Wesley stated she came to consciousness and was aware of appellant holding her down and striking her with something in his hand. She initially believed he was hitting her with a tree branch; when she saw her daughter's pictures of the scene of the assault, she believed he could have been swinging one of the metal rods, or pipes, seen in the photograph. The police photographs show a series of long, thin, raised welts running down Wesley's right arm. It is reasonable to infer that she was struck repeatedly with something long and thin and hard. *See Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008) (even without description of weapon, injuries suffered by the victim can by themselves be sufficient basis for inferring deadly weapon was used); *see also Moore v. State*, 531 S.W.2d 140, 142 (Tex. Crim. App. 1976) (use of deadly weapon can be proved by circumstantial evidence). We conclude the evidence supports a

finding that appellant's use of a branch or a pipe in this case could have caused serious bodily injury. Rational jurors could have concluded one of those items was used as a deadly weapon.

When we view the evidence in the light most favorable to the prosecution, we conclude it is sufficient to establish appellant employed one or more deadly weapons in his assault of Wesley. We overrule appellant's single issue, and we affirm the trial court's judgment.


Do Not Publish
TEX. R. APP. P. 47
140724F.U05

/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

ROBERT JOE KIMBLE, Appellant

No. 05-14-00724-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1355104-T.
Opinion delivered by Chief Justice Wright.
Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered May 28, 2015.